THE HONORABLE BARBARA J. ROTHSTEIN

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| IN RE SANA BIOTECHNOLOGY, INC. SECURITIES LITIGATION | Case No.  2:25-cv-00512-BJR |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | CLASS ACTION |
| | **REPLY IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT** |

REPLY IN SUPPORT OF MOTION FOR LEAVE TO
AMEND COMPLAINT
Case No. 2:25-CV-00512-BJR

**BADGLEY MULLINS TURNER PLLC**
19910 50TH AVE. W., SUITE 103
LYNNWOOD, WA 98036
TEL: (206) 621-6566

Where, as here, the defendants concede that there is no reason to deny amendment except purported futility, courts all-but-universally grant leave to amend and then decide whether the proposed amended complaint states a claim on a motion to dismiss. To do otherwise—particularly here, because Defendants rely on their motion to dismiss the FAC to oppose amendment—the Court must *first* determine whether the FAC states a claim and only thereafter decide whether the PSAC changes the picture. The Court should not waste its resources with this unnecessary work.

Regardless, the PSAC states a claim. Before the Class Period, Defendants repeatedly told investors that the first handful of patients' results in Sana's first clinical trial of its leading product SC291, ARDENT, would be a watershed that largely removed the risks of investment. And before the Class Period, Defendants explained what success required: that SC291 cells survive at least 3 months in the patients' bodies. The January 2024 statements that start the Class Period, in which Defendants call the first four patients' results a complete success, misled investors because in three patients, the SC291 cells had not even lasted 2 months, all but guaranteeing a quick relapse, and Sana did not have 3-month results for the last patient. Defendants knew as much, because the results they presented to investors were drawn from the same blood samples which showed premature SC291 cell death. And they capitalized on the false statements, quickly raising a year's worth of operating capital which they needed to fund their operations beyond the end of 2024. The risks concealed by Defendants' false statements materialized in May 2024, when Sana pushed back the date that it would present SC291 cell durability data in the first four patients, and then in November 2024, when it abandoned SC291's oncology indication, in both cases causing Sana's stock price to fall. Thus, the PSAC pleads every element of Plaintiffs' claim; the Court should grant leave to amend.

## I. CHALLENGES TO THE MERITS OF PLAINTIFFS' PLEADING ARE PROPERLY DEFERRED TO THE MOTION TO DISMISS STAGE[1]

Defendants concede that there is no reason to deny amendment except, they claim, that

---

[1] All references to "¶" are to the PSAC, Dkt. No. 41-2. References to "Def. Opp." are to pages of Defendants' motion to dismiss the PSAC, Dkt. No. 42.

REPLY IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT - 1
Case No. 2:25-CV-00512-BJR

**BADGLEY MULLINS TURNER PLLC**
19910 50TH AVE. W., SUITE 103
LYNNWOOD, WA 98036
TEL: (206) 621-6566

amendment would be futile. "Ordinarily, courts will defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed." *Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D. Cal. 2003); *accord G.P. Muggie & Sons, LLC v. Hammon Plating Corp.*, 2017 WL 5451755, at *4 (N.D. Cal. Nov. 14, 2017); *Pauma Band of Luiseno Mission Indians of Pauma & Yuima Rsrv. v. Unite Here Int'l Union*, 2017 WL 11556711, at *1 (S.D. Cal. Sept. 26, 2017) (noting that defendant had raised futility argument but deferring consideration to motion to dismiss); *Guzman v. Graham Packaging Co., L.P.*, 2025 WL 1696104, at *4 (E.D. Cal. June 17, 2025) (same); *Rivkin v. J.P. Morgan Chase, N.A.*, 2016 WL 6094485, at *2 (E.D. Cal. Oct. 18, 2016) (same).

In all but one of Defendants' cases, the courts had already entered an opinion and order dismissing a previous complaint before denying leave to amend.[2] That previous order told the plaintiffs what they needed to allege to survive a motion to dismiss. The order also narrowed the court's task, because it just needed to decide whether the amendments addressed the deficiencies.

Moreover, Defendants' arguments require the Court to determine whether the FAC states a claim before addressing whether the amendments address the deficiency, a wholly unnecessary task. Defendants' opposition to the motion for leave to amend is not self-contained; rather, it refers back to their motion to dismiss. *See* e.g. Def. Opp. at *9 (Dkt. No. 42), writing "as explained in Defendants' MTD"). Differences between the two complaints, which Defendants do not address, moot Defendants' arguments. For example, Defendants argued that SC291 cells might have migrated to lymph nodes. Plaintiffs' expert shows that this is impossible. ¶79. Thus, the Court cannot simply apply the arguments Defendants raised in their motion to dismiss the motion for leave to amend; it must modify them, without the benefit of party presentation.

Because the pleading standards in securities class actions are "technical" and "demanding," "[s]ometimes it is easy to tell [whether a complaint states a claim], but often it is

---

[2] In *Maciora v. PMB Helin Donovan LLP*, 2016 WL 3916992, at *4 (W.D. Wash. July 20, 2016), the court granted a fully-briefed motion to dismiss and then denied a motion for leave to amend because the proposed amended complaint was substantively identical to the complaint it had just dismissed.

REPLY IN SUPPORT OF MOTION FOR LEAVE TO
AMEND COMPLAINT - 2
Case No. 2:25-CV-00512-BJR

**BADGLEY MULLINS TURNER PLLC**
19910 50TH AVE. W., SUITE 103
LYNNWOOD, WA 98036
TEL: (206) 621-6566

not." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Defendants would complicate the Court's task by asking it to adapt Defendants' arguments to dismiss the FAC to the PSAC. The Court should do what other courts do: wait for the motion to dismiss.

## II.    THE PSAC STATES A CLAIM

### a.  Falsity

"A statement or omission is misleading in the securities fraud context if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 691 (9th Cir. 2011). In evaluating falsity, courts read statements in context. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 959 (9th Cir. 1996) (statement that "everything [was] going fine" materially misleading in context because it responded to negative report); *accord Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 770 (9th Cir. 2023).

In 2021, Sana raised nearly $700 million at a $5 billion valuation before conducting any clinical trials, breaking records. ¶4. By 2023, Sana had abandoned its most promising technologies and had just begun its first Phase 1 clinical trial; it had barely enough cash to make it through 2024. ¶149. Sana's fall from grace left its credibility with investors in tatters—its stock price was down 90%—a dangerous state of affairs for a company years and hundreds of millions of dollars away from a marketable product.  ¶4.

As of 2023, Sana was focusing on developing cells that evade the human immune system. ¶40. ARDENT focused on a particular cell, SC291, to treat blood cancers. ¶44. Efficacy cannot be shown with just a few patients. ¶7. But because SC291 had never been used in humans, its clinical trial had to be protracted. ¶¶44-45. Sana did not have enough cash to continue operating through the completion of the Phase 1 trial. ¶53. So Defendants had to deliver good news early in ARDENT to raise enough cash to complete ARDENT.  ¶54.

Before the Class Period, Defendants told investors why Sana could deliver early good news. ¶¶59-60. SC291 consists of genetically modified cells that treat blood cancers by destroying all B cells. ¶¶27-37. There are existing products that use this mechanism of action; SC291 is novel

REPLY IN SUPPORT OF MOTION FOR LEAVE TO
AMEND COMPLAINT - 3
Case No. 2:25-CV-00512-BJR

**BADGLEY MULLINS TURNER PLLC**
19910 50TH AVE. W., SUITE 103
LYNNWOOD, WA 98036
TEL: (206) 621-6566

because it is made from donor cells which have been genetically modified to evade the immune system rather than the patient's own cells, which the patient's immune system would not target. ¶¶32-37. The key question for SC291 is whether it has evaded the patient's immune system. ¶59.

Before the Class Period, Defendants told investors repeatedly that it only took a handful of patients to demonstrate immune evasion. ¶¶62-63. First, one month after treating the first few patients, Sana would know whether SC291 cells evaded the innate immune system, because otherwise they would be destroyed by the innate immune system. ¶59. Then, Defendants would determine how long SC291 cells persisted in the patients. ¶¶65-66. Defendants told investors how long SC291 cells had to last: three to six months. ¶67. Otherwise, Defendants themselves explained, the patients would quickly relapse. ¶73. Defendants told investors that this question, too, would be answered with the first handful of patients. ¶67.

On January 9, 2024, the first day of the Class Period, Defendants delivered a special presentation to announce results from that first handful of ARDENT patients. ¶81. Defendants presented four patients' results. *Id.* Their results were, Defendants claimed, "exactly what we hoped we would see." ¶115. The standout success was patient 2, who was purportedly enjoying an ongoing complete response on the lowest dose. ¶83. Defendants claimed Patient 2's success showed that "the drug is working as we hoped it would on the safety and efficacy side." ¶114.

Defendants' statements were false. Though Sana actually needed the cells to survive at least three months, in 3 of 4 patients (including Patient 2), the cells had not even made it two months—data that Sana had in hand on January 9, 2024. ¶¶89-98. Nor was the fourth patient a success; Sana just didn't have three-month data for that patient yet. ¶97.

Thus, the first four patients' data was not "exactly what [Sana] hoped we would see." ¶115. Instead, it showed that—to date, at the dose levels Defendants had tested, for the indication they sought—SC291 had failed. ¶98. That information was clearly material. Defendants themselves had long told investors that the results from the first handful of patients would be critical, and on January 9, they represented that they had retired 80% of SC291's risk. ¶64. In *Warshaw*, the defendants' statement that things were "fine" was actionable because they were

REPLY IN SUPPORT OF MOTION FOR LEAVE TO
AMEND COMPLAINT - 4
Case No. 2:25-CV-00512-BJR

responding to specific allegations showing how things were not fine. 74 F.3d at 959. Here, the Defendants' statements were specific, and therefore actionable, because they had spent months telling investors exactly what success looked like.

Defendants ask the Court to find that the Complaint does not sufficiently allege that their statements were misleading, but ignore what they had told investors. Defendants did not "sa[y] that they viewed ARDENT as promising," as they claim in their brief. Reasonable investors would interpret Harr's statements that Sana had seen what it hoped to see in the first handful of patients to refer to his earlier statements explaining exactly what Sana hoped to see in these patients. *See Chabot v. Walgreens Boots All., Inc.*, 2023 WL 2908827, at *13 (M.D. Pa. Mar. 31, 2023).

Defendants argue, instead, that their statements are better read as vague promises, but on a motion to dismiss, Plaintiffs need only ***plausibly*** allege falsity. *See Glazer*, 63 F.4th at 766. Thus, "the court reads ambiguities in challenged statements in the plaintiff's favor." *Skiadas*, 2020 WL 3268495, at *9 (cleaned up); *see also IWA Forest Indus. Pension Plan v. Textron Inc.*, 14 F.4th 141, 147 (2d Cir. 2021). There is no comparative analysis on falsity. *Id.* Regardless, there is evidence that investors did not read Defendants' statements restrictively. When Defendants abandoned SC291 in oncology, an analyst wrote that this was likely because "the efficacy profile ***did not continue to hold up***" past the first four patients, though in fact Sana had not achieved efficacy for the first four patients.

Defendants' statements that the two durable complete responses (Patient 2 and Patient 4's) showed SC291 "is working as we hoped it would on the safety and efficacy side" is false for the same reason. ¶114. Because Patient 2's SC291 cells were gone within 2 months, Patient 2 was all but certain to relapse within a year. ¶¶71-73. That is not the efficacy that Sana desired. And Defendants simply did not have the requisite data for Patient 4. ¶97.

Defendants' February 29 statement that ""Early SC291 data from the ongoing [t]he early ARDENT trial … demonstrate the desired immune evasion profile, and early clinical efficacy using hypoimmune technology" is also false for the same reason. ¶117. Nor is it exculpatory that Defendants only claimed to speak to what the early data showed. Defendants did not present

REPLY IN SUPPORT OF MOTION FOR LEAVE TO
AMEND COMPLAINT - 5
Case No. 2:25-CV-00512-BJR

durability results in the "early data" because, supposedly, that data wasn't available until more time had passed. ¶67. But because SC291 cells had disappeared so quickly, Defendants did have early durability data. ¶¶89-100. Defendants' statements stating early data showed SC291 was a success in the first four patients at a minimum implied that SC291 had not already failed. ¶¶86-89. That SC291 *might* prove successful in different indications or at higher doses does not make Defendants' statements that SC291 was currently succeeding any less misleading. "[T]he failure to disclose 'issues' and 'concerns'" with clinical trial data misleads investors even if those issues are later solved favorably. *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 709 (9th Cir. 2016). And here, the issues did not go away. Even at higher doses, SC291 rarely survived for the requisite three months, let alone six, and Sana abandoned SC291 as an oncology treatment. ¶105.

Nor need Plaintiffs show that Defendants subjectively disbelieved their statements, or know facts calling the statements into question, because Defendants' statements were not opinions. Defendants' statement that they were seeing "what they'd hoped to see" referred back to their earlier, objective description of what success was; as such, these statements were statements of fact. ¶111. Nor did Defendants couch their statements as opinions with words like "we believe." Here, too, Defendants used objective words such as "what we see" or what "the early data show." E.g. ¶¶111, 132. Thus, Defendants did not merely express their opinion about the data; they told investors in objective terms what the data showed.

Defendants also claim that Plaintiffs rely on their expert to show that a more sensitive test showed that SC291 cells had been destroyed within 2 months. So did Defendants. ¶¶92, 94; ARDENT Results Paper, Dkt. No. 43-1 at 1363 ("[w]e here suggest that [disease-specific antigens] … as potential markers for deep tissue depletion of CD19 cells … [whose] emergence might be predictive of a patient's relapse.").

Defendants' cases are inapposite. Indeed, one is nearly the opposite of this case. *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 874 (9th Cir. 2012). In *Rigel*, the defendant preselected a statistical analysis and then described the analysis's results. As here, reasonable investors would understand that defendants' statements referred to the earlier preselected method,

REPLY IN SUPPORT OF MOTION FOR LEAVE TO
AMEND COMPLAINT - 6
Case No. 2:25-CV-00512-BJR

**BADGLEY MULLINS TURNER PLLC**
19910 50TH AVE. W., SUITE 103
LYNNWOOD, WA 98036
TEL: (206) 621-6566

so plaintiffs' argument that the defendants should have used a different method did not show the statements were false. In another case, the defendant accurately described the results of an early proposed COVID treatment and then expressed hope that future results would be positive. *In re Sorrento Therapeutics, Inc. Sec. Litig.*, 97 F.4th 634, 642 (9th Cir. 2024). The defendant did not, as here, make false claims about what the data was already showing. Finally, in *Dresner v. Silverback Therapeutics, Inc.*, 2023 WL 2913755 (W.D. Wash. Apr. 12, 2023), the plaintiff could not show that the omitted information was known to the defendants when they made their statements. *Id.* at \*7.

### b. Loss causation

Loss causation allegations suffice if they show that "the underlying facts concealed by fraud … affect the stock price." *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 754 (9th Cir. 2018). "Revelation of fraud in the marketplace is simply one of the 'infinite variety' of causation theories a plaintiff might allege to satisfy proximate cause." *Id.*

Plaintiffs who allege that the defendants' false statements concealed operational problems frequently allege loss causation from poor quarterly earnings. *E.g. In re Fastly, Inc. Sec. Litig.*, 801 F. Supp. 3d 880, 916 (N.D. Cal. 2025); *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1053 (9th Cir. 2008) (unlawful off-label marketing revealed by poor earnings after regulatory action). The corrective disclosures in this case are similar.

Defendants had told investors that Sana would have durability data for the initial handful of Sana patients by early 2024 and would present the data at one of three conferences held from April through June 2024. ¶¶141, 160. Sana announced quarterly earnings on May 8, 2024; reasonable investors would expect that Sana would use the occasion to announce its attendance at one of the two remaining conferences, which is exactly what Defendants had promised. ¶141. Sana did not mention that it would attend the conferences, so investors understood that the durability data would not be presented until December. ¶¶161-62. Defendants would likely present the durability data if it were good, so a reasonable investor would suspect that the data was bad. So Sana's stock price fell $1.99 (21.0%). ¶163.

REPLY IN SUPPORT OF MOTION FOR LEAVE TO
AMEND COMPLAINT - 7
Case No. 2:25-CV-00512-BJR

The second corrective disclosure is Sana's abandonment of SC291. Defendants' statements concealed that SC291 had not lasted long enough in the initial patients' bodies to have a chance at being an effective treatment. ¶¶89-100. While it was possible that SC291 might do well enough at high doses, the fact that it had not survived in the first four patients made that outcome much less likely. ¶103. The September 2024 data in the ARDENT Results Paper shows that SC291 cells did *not* last long enough to treat cancers. ¶98. The Complaint plausibly links Sana's abandonment of SC291 in cancers in November 2024 to SC291's failure. Indeed, stock analysts themselves drew that conclusion. ¶164 ("[o]ur understanding is likely that the efficacy profile did not continue to hold up.").

> c. *Scienter*

The Complaint alleges that Defendants knew facts showing their statements were misleading. The ARDENT Results Paper included a methods section. In that section, it stated that it used blood tests to evaluate patients' clinical responses. ¶142. The ARDENT Results Paper stated that the tests showing SC291's persistence (both the antibody test and the B cell test) are also run on blood samples. *Id.* Thus, Defendants used the very same blood samples to both evaluate clinical responses and SC291 cell persistence. *Id.* Because Defendants presented clinical response data on January 9, 2024, they also had SC291 cell persistence data at the same time. *Id.*

Moreover, the PSAC sufficiently alleges that Defendants personally reviewed the data because they said they would. Defendants' statements that they are personally involved in reviewing types of data is probative of scienter. *See Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*, 380 F.3d 1226, 1234 (9th Cir. 2004). If a defendant claims that "we" review particular data, on a motion to dismiss, courts do not attempt to determine which particular employee does so. *See Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 602 (N.D. Cal. 2019).

Again and again, Defendants told investors that the first handful of patients' persistence data would show whether SC291 works. ¶¶ 62-63. Defendants told investors when the data would be available (early 2024). ¶141. Defendants also told investors that they would present the data at

REPLY IN SUPPORT OF MOTION FOR LEAVE TO
AMEND COMPLAINT - 8
Case No. 2:25-CV-00512-BJR

**BADGLEY MULLINS TURNER PLLC**
19910 50TH AVE. W., SUITE 103
LYNNWOOD, WA 98036
TEL: (206) 621-6566

a medical conference, so Defendants intended to review the data. *Id.* The data was available as of January 9, 2024, when Defendants presented clinical efficacy data on the very same patients. ¶81. The inference that Defendants actually reviewed the critical data that they intended to make the subject of a medical presentation when it was available is at least as plausible as any competing inference.

The Complaint also bolsters the inference of scienter with motive allegations. Allegations that a company needs to raise funds to survive support an inference of scienter. *Skiadas v. Acer Therapeutics Inc.*, 2020 WL 3268495, at *11 (S.D.N.Y. June 16, 2020); *Frater v. Hemispherx Biopharma, Inc.*, 996 F. Supp. 2d 335, 350 (E.D. Pa. 2014) (finding scienter when defendant "was allegedly sufficiently short on cash at the time of the alleged misrepresentations that it could not afford to finance an additional clinical trial as the FDA had recommended."). Indeed, such allegations can suffice by themselves to adequately allege scienter. *Leone v. ASP Isotopes Inc.*, 2025 WL 3484821, at *23 (S.D.N.Y. Dec. 4, 2025).

Sana had barely enough cash to make it through to the end of 2024. ¶53. It did not even have enough cash to continue operating until it finished ARDENT. *Id.* Sana needed to report good news. *Id.* It had told investors that the data from the first handful of patients would prove critical. ¶55. If Defendants did not present this data, investors would assume that the data was bad, and Sana would not be able to raise capital. ¶¶53-54. If it reported that the SC291 had failed, investors would not be interested. *Id.* Sana had no other clinical trials that were far enough advanced to provide other good news. ¶44. So Sana's very survival was at stake. ¶49.

Then Sana actually did use the statements to raise money. Defendants' false statements caused Sana's stock price to increase 40% in one day. ¶9. A month later, Sana sold almost $190 million of its shares.[3] *Id.* Sana then used the cash to explore SC291 in other indications that did not require 3-month survival. ¶164.

---

[3] In *Sorrento*, the defendant had already addressed its financial condition before making the allegedly false statements and the plaintiffs had not sufficiently alleged that the defendant even attempted to raise any cash. 97 F.4th at 642-43.

REPLY IN SUPPORT OF MOTION FOR LEAVE TO
AMEND COMPLAINT - 9
Case No. 2:25-CV-00512-BJR

**BADGLEY MULLINS TURNER PLLC**
19910 50TH AVE. W., SUITE 103
LYNNWOOD, WA 98036
TEL: (206) 621-6566

## III.    CONCLUSION

The Court should grant leave to file the PSAC. If the Court finds that the PSAC does not state a claim, it should still grant leave to amend. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (In securities fraud cases, "[t]he acid test is a motion to dismiss. We need to bear in mind that we are not operating in the world of notice pleadings. In this technical and demanding corner of the law, the drafting of a cognizable complaint can be a matter of trial and error.").

Dated:  February 3, 2026

Respectfully submitted,

**BADGLEY MULLINS TURNER PLLC**
s/ *Duncan C. Turner*
Duncan C. Turner, WSBA No. 20597
19910 50th Ave. W., Suite 103
Lynnwood, WA 98036
Tel: (206) 621-6566
Email: dturner@badgleymullins.com

*Liaison Counsel for the Class*

*/s/ Jonathan Horne*

**THE ROSEN LAW FIRM**
Jonathan Horne (*pro hac vice*)
Yitzchok Fishbach (*pro hac vice pending*)
275 Madison Avenue, 40th Fl.
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
jhorne@rosenlegal.com
yfishbach@rosenlegal.com

*Court-appointed Lead Counsel*

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165

REPLY IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT - 10
Case No. 2:25-CV-00512-BJR

**BADGLEY MULLINS TURNER PLLC**
19910 50TH AVE. W., SUITE 103
LYNNWOOD, WA 98036
TEL: (206) 621-6566

Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

*Additional counsel for Lead Plaintiffs*

REPLY IN SUPPORT OF MOTION FOR LEAVE TO
AMEND COMPLAINT - 11
Case No. 2:25-CV-00512-BJR

BADGLEY MULLINS TURNER PLLC
19910 50TH AVE. W., SUITE 103
LYNNWOOD, WA 98036
TEL: (206) 621-6566

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 3rd day of February 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Yonten Dorjee*
Yonten Dorjee, Paralegal
**BADGLEY MULLINS TURNER PLLC**
Email: ydorjee@badgleymullins.com

REPLY IN SUPPORT OF MOTION FOR LEAVE TO
AMEND COMPLAINT - 12
Case No. 2:25-CV-00512-BJR

**BADGLEY MULLINS TURNER PLLC**
19910 50TH AVE. W., SUITE 103
LYNNWOOD, WA 98036
TEL: (206) 621-6566